LLOYD NEWMAN and Another, Plaintiffs, *v.* LOUIS NEWMAN, as Trustee, Defendant.

Supreme Court, Erie County, May 12, 1927.

Trusts — construction — evidence shows intention of creator of trust was to keep principal intact, deducting losses, if any, and paying income — income computed by deducting cost of operation and losses from income, balance being net profit to beneficiaries — action of trustee in deducting from income any losses which were sustained from sale of securities before paying over income, proper — declaratory judgment granted under Civil Practice Act, § 473, and Rules of Civil Practice, rules 210–214.

A trust agreement, which, after providing that the income and profits of a trust fund and the income and profits of any proceeds of any sale or reinvestment of the proceeds of any sale thereof, should be paid to designated beneficiaries, vests in the trustee thereof the power to sell and reinvest the trust funds, and must, under the evidence, be construed as evidencing an intention on the part of the creator of the trust to keep the principal of the fund intact and deduct the losses, if any, from the profits, when possible, when determining and paying income; therefore, in computing the income of the trust distributable to the beneficiaries therein named, the cost of operation and the losses from income should be deducted, the balance being net income. The capital should be kept intact by addition thereto of gains, if necessary.

The action of the trustee, who, before paying anything to the beneficiaries, deducted from the income any losses which were sustained from the sale of securities, was proper.

Declaratory judgment construing said trust agreement granted pursuant to section 473 of the Civil Practice Act and rules 210–214 of the Rules of Civil Practice.

ACTION for declaratory judgment as to rights of parties under trust agreement.

*Moot, Sprague, Brownell & Marcy,* for the plaintiffs.

*Albrecht, Maguire & Mills,* for the defendant.

LYTLE, J. This is an action brought by Lloyd Newman (son) and Anna Newman Rebadow (daughter) against Louis Newman for the purpose of procuring a declaratory judgment pursuant to

section 473 of the Civil Practice Act and Rules of Civil Practice, rules 210–214, which said judgment shall declare in substance what are:

" The legal rights and relationships of the parties arising out of a certain trust agreement dated April 15th, 1918, and the amendment thereto dated December 31st, 1918, and more specifically in regard to the following matters and questions:

" *First.* What is the correct and legal manner, method or form of procedure in computing the income of the said Trust distributable to the beneficiaries therein named.

" *Second.* Whether or not the beneficiaries under the said Trust have received in each year during the period of said Trust and to the present time, all the income to which the said beneficiaries are legally entitled under the terms of said Trust Agreement."

It appears that said trust was created April 15, 1918, by an agreement in writing made and executed by Louis Newman, Lillian D. Newman, Lloyd D. Newman and Anna Newman Rebadow, and providing, among other things, that

" Louis Newman is possessed of 1,400 shares of U. S. Steel; 200 shares Tonawanda Board & Paper Company, in trust and for the benefit of my wife, Lillian D. Newman.

" *The income and profits thereof and therefrom and the income and profits of and from any and all proceeds of any sale or sales, or reinvestment of the proceeds of any sale or sales thereof, to be paid to my said wife during the term of her natural life.*

" Upon her death the principal shall be distributed in accordance with the will of Lillian D. Newman."

Then follows, in the same language, a provision as to other property (stocks) in trust, etc., for Lloyd D. Newman during the term of his life, and then the principal to be distributed in accordance with the will of Lillian D. Newman.

Then a similar trust for Anna Newman Rebadow, disposition the same.

Then power in trustee to sell and reinvest.

The amendment of December 31, 1918, adds further capital to the trusts for Lloyd Newman and Anna Newman Rebadow, and provides that all income as to them shall be divided equally and does not in any manner affect the main questions involved herein.

It further appears from the evidence in this case that Louis Newman, acting as trustee, before paying anything to the beneficiaries, *deducted from the income any losses which were sustained from the sale of securities,* before paying over the income to the beneficiaries; that the beneficiaries knew this and were satisfied.

50

That it was the intention of the parties (and the attorney who drew the agreement was so informed and directed to prepare the agreement to so provide) that the principal of the trust estate was to remain intact.

That there were from time to time profits and losses; that the amount of such losses was deducted from the income and profits before payment to the beneficiaries.

Taking up the first question: What is the correct method of computing the income? The agreement provides that the trustee can " sell and dispose of any or all of the said stock and invest and reinvest," etc., " and that such investments and reinvestments need not be in property or securities in which trustees are permitted to invest under the laws of the State of New York."

This provides a very broad discretionary power in the trustee.

The trustee has sold and bought securities, had losses and made gains.

Where trust funds are invested in bonds running for a term of years and purchased at a premium, such a proportionate deduction could be made from the interest as would at the maturity of the bonds preserve the principal of the fund intact at maturity. (*Matter of Stevens*, 187 N. Y. 471.)

Whether the loss must be charged to principal or income depends upon the intention of the trust. (*Matter of Stevens, supra*; *Shaw v. Cordis*, 143 Mass. 443.)

We must look to the intention of the agreement.

The testimony shows that the intention of the creator was to keep the principal intact, deducting the losses, if any, from the profits, when possible, when determining and paying the income, also that this same general scheme of administration under the trust agreement has from the beginning been carried out, without change, from one system to another. This has been done by the creator of the trust, thereby clearly showing what his intention was and what the intention of the agreement was.

If there is any lack of clarity in the written trust agreement, due to simplicity or otherwise, we, fortunately, can turn to the administration of the trust by the creator which ought to be the best evidence of intent.

What may be corpus or increment, capital or surplus, dividends or income, profit or loss, the scheme of operation and the creator's intent as shown in operation and by the evidence in the case, leave but one conclusion, the capital to be kept intact, all increase of whatsoever nature, less any loss, to be income.

The provisions of the particular instrument or trust agreement will determine the right of the beneficiaries, the question being

in all cases one of construction, to ascertain the intention and not depending upon any arbitrary or fixed rule. (*McLouth* v. *Hunt,* 154 N. Y. 179; *Woodruff* v. *Woodruff,* 54 App. Div. 414.)

As to interpretation, see *Browne* v. *Murdock* (12 Abb. N. C. 360); *Equitable Trust Co.* v. *Miller* (197 App. Div. 391; affd., 233 N. Y. 650).

It, therefore, follows that the first question must be answered:

That the correct manner of computing the income of the aforesaid trust, distributable to the beneficiaries therein named, is by deducting the cost of operation and losses from income, the balance being *net* profit. The capital is to be kept intact by addition thereto of gains if necessary.

The second question must be and is answered in the affirmative.

Findings and decree may be prepared accordingly.