Van Voorhis, J.
This proceeding has been instituted by the Commercial National Bank and Trust Company of New York, for a construction of a trust indenture under which the settlor appellant Daniel P. Erwin and itself are cotrustees.
Appellant in 1930 created this trust consisting of securities then worth about $250,000, the income from which was directed to be paid to appellant (who is hereinafter described as 11 settlor ”) during the term of his natural life, and the principal to his personal representative upon his decease. This trust was to be revocable after five years from its creation, and was subject to further amendment by appellant as settlor. He amended it in the following year, 1931, by diverting $350 monthly from the income to his wife Mary Moore Erwin,- “ to continue during *381 such time as the Settlor and the said Mary Moore Erwin are both living, but, in the event that the Settlor and the said Mary Moore Erwin should hereafter be divorced, only until she remarries and upon such remarriage such payments shall forever cease ”. The principal sum of $150,000 was to be set aside upon his death for Mary Moore Erwin, unless she had remarried. The balance of the income remained payable to settlor. He and Mary Moore Erwin were divorced later in 1931, but she has not remarried, and is still receiving $350 per month out of the net income of the trust.
In 1938, settlor again amended this trust by directing that the balance of the income, after payment of $350 per month to his first wife, should be paid to Boma Erwin, who had become his second wife, and he likewise appointed her as beneficiary of the remaining principal of the trust if she survived him. Settlor at the same time made the trust irrevocable, and renounced the right further to alter its provisions.
Unlike the disposition made for his first wife, the provisions for Boma Erwin were not conditioned upon her refraining from becoming the wife of another. Settlor and Boma were divorced in 1940. Since then, she has twice remarried, and is now Boma Erwin Jenkins, but she continues to receive all of the income from the trust which is not paid to appellant’s first wife, Mary Moore Erwin.
Appellant has married for the third time, and continues to live in the house on Fithian Lane, East Hampton, Long Island, which is the subject of this proceeding to construe the trust agreement. This house has been a trust asset since it was bought at settlor’s request in 1935. He has since resided there without payment of rent, taxes or other carrying charges. It was not of practical importance whether he paid those items into the trust from 1935 until 1938, while he was residuary income beneficiary, nor from 1938 until 1940, while he lived there with his second wife Boma Erwin after she hád become entitled to the residue of the income. Since defendant and Boma Erwin have become divorced, however, which occurred in 1940, the beneficiary of the residue of the income has not been obtaining the usufruct of this house and lot, and settlor would not be entitled to continue to occupy it without the payment of rent, unless its beneficial use has been reserved to him by some special clause in the instrument. Settlor claims to have inserted such a clause for this purpose by his 1938 amendment, which became paragraph (1) of the section of the indenture numbered *382 “ First ”, and adds to the powers of the trustees authority “(]) To retain as part of the trust estate all the real property and improvements thereon situated oh Fithian Lane, Easthampton, L. I., New York in which the Settlor now resides, so long as the Settlor and/or Roma Erwin and/or any children of the Settlor shall continue to reside therein, without the Trustees being liable to account for any resulting loss by reason of the retention thereof.”
Roma Erwin Jenkins contends that this clause was intended to give to settlor no rights whatever, that the trustees were not required to permit him to remain in the premises except in their discretion regardless of whether he paid or did not pay rent or carrying charges, and that this provision has no other purpose-or significance than to protect the trustees against claims for negligence or misconduct in event that they neglected to sell this house in a falling market out of favor to settlor or his family. It has been earnestly contended on behalf of Roma Jenkins that by this clause her former husband had no intention of providing a home for himself, that he can occupy it only if it is rented to him and then only upon the same basis on which it could be rented to a stranger. Settlor, on the other hand, claims the right under this provision not only to live there himself free from rent or carrying charges, but also to sublet all or any part of the premises for his own benefit at his election.
Special Term has declined to adopt the theory that paragraph “ 1 ” of section “ First ” of the amended trust indenture gives no rights to the settlor, and has held that this clause requires the trustees to continue him in occupation of the house at East Hampton for so long as he signifies an intention to remain there, but subject to certain conditions. Among these conditions is a requirement that he shall pay “ rent for the use of said premises at such rate as the Corporate Trustee shall from time to time determine to be the fair and reasonable rental value thereof,” that he shall also pay “ all charges for water, electricity, gas and other services furnished to said premises,” that he “ shall use said premises exclusively for a private residence and shall not let or sublet the whole or any part thereof ’ ’ and that he “ shall keep said premises, including the grounds, in good order and condition.” The trust has been required to bear the expense of repairs, taxes and insurance.
Although the clause in question might have been drawn with greater clarity, it seems to us to have been intended to accomplish more than merely to protect the trustees in event of loss *383 due to their negligence or misconduct in omitting to sell this property in case of a falling market. It would not have been necessary to make specific mention of such a point respecting this dwelling house, inasmuch as the trustees had already been authorized to invest trust assets in nonlegals, including every kind of personal property and “ real estate ”, without being-liable to account for any resulting loss, and likewise “ To sell at public or private sale in their discretion and upon such terms and at such time or times and in such lots or parcels as they may think proper any and all real or personal property which may at any time constitute all or any part of the trust estate ”. We think that more was intended than to exonerate the trustees if they retained this house as a wasting asset against their better judgment to enable settlor to continue to rent it for his home. Special Term rightly held that the trustees were required to retain this parcel of real property if appellant notified them that he wished to continue to live there, but for the reason, as we think, that it was the intention and purpose of paragraph “ 1 ” of section “ First ” of the amended indenture to reserve to the settlor, or to confer upon him and his family, the use of the premises for so long as they should continue to reside therein. Roma Erwin Jenkins and her child have not continued to live there. They have ceased to be part of the settlor’s household, they have left the premises, and constitute no serious problem to the court so far as the construction of this clause is concerned. An Official Referee to whom the question was referred, has reported that the settlor has continued at all times to reside there himself, and his report in this respect has been confirmed by Special Term.
Considered in the factual background, in view of which all trusts must be regarded, it would be hard to say that this paragraph, without ambiguity, deprives the settlor of the use of this house on Fithian Lane in East Hampton, Long Island. There was some purpose in mind on account of which this particular direction to the trustees was inserted. Special Term has held that he had the right to continue to remain there for as long as he wishes on payment of rent, but if the purpose of this paragraph in the instrument was to secure him in the use of the premises, it is reasonable to infer that this meant that the beneficial use was granted to him. It is significant that the trustees have construed the instrument in this manner from the time when it was made in 1938 until 1949, after the commencement of this proceeding. Roma Erwin Jenkins was *384 entitled to the residuary income from the trust, to be sure, while she lived there until 1940, but for nine years after that the only authority for permitting settlor to have the beneficial use of the premises is the special clause relating thereto which is now under construction. In Matter of Herzog (301 N. Y. 127, 138) the Court of Appeals stated that “ Authority is ample for the proposition that a court in the exercise of its equitable powers may control the administration of a trust so as to effectuate its avowed purpose, particularly when changing circumstances would otherwise defeat it ”, and said: “ The parties placed a practical construction on the arrangement which may not be ignored.” (P. 137.) In Rice v. Halsey (156 App. Div. 802, 806) in speaking of the meaning of a trust agreement, this court said: “to ascertain that intent resort may be had as to what was done under it.” (See, also, Newman v. Newman, 129 Misc. 784, 786.)
The rule thus enunciated in the decisions cited, furnishes an aid which should be followed in the interpretation of the trust instrument now in suit if its meaning be ambiguous, as we think that it is.
The greatest rights which this clause could be construed as conferring upon the settlor would be to grant to him the beneficial use of this dwelling house for so long as he continued to reside there. The intention was not to enable him to make a profit by subletting the premises, nor for so long as he continued to live there was it intended to allow him greater rights than customarily are held to belong to the larger estate of life tenancy. The usual rule of construction is that a life tenant is obligated to pay for ordinary repairs, insurance, taxes and other carrying charges (2 Scott on Trusts, p. 1275; Matter of Chapal, 245 App. Div. 818, revd. on other grounds 269 N. Y. 464; Matter of Ely, 249 App. Div. 8; Matter of Albertson, 113 N. Y. 434).
The order appealed from should be modified so as to eliminate such portions thereof as require appellant to pay rent for the personal use of the said premises situated on Fithian Lane, East Hampton, Long Island, as a condition of the occupancy thereof, and should further be modified so as to require settlor to pay current carrying charges, and as so modified should be affirmed, with costs to appellant payable out of the fund. Settle order.
Dore, J. P., Callahan and Shientag, JJ., concur; Cohn, J., dissents and votes to affirm.
*385 Order modified so as to eliminate such portions thereof as require appellant to pay rent for the personal use of the premises situated on Fithian Lane, East Hampton, Long Island, as a condition of the occupancy thereof, and further modified so as to require settlor to pay current carrying charges and, as so modified, affirmed with costs to the appellant payable out of the fund. Settle order on notice.